

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Kathleen O. Gavin
Assistant United States Attorney
Kathleen.Gavin@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT 410-209-4887
MAIN 410-209-4800
FAX 410-962-3091

HEE 9/16/20

September 16, 2020

Jack McMahon, Esquire
139 Croskey Street
Philadelphia, PA 19103

Re: *United States v. Thi Van Ho*
Criminal No. ~~JKB-09-0397~~

$JKB-19-0397$

Dear Mr. McMahon:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Thi Van Ho (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **Friday, September 25, 2020**, it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offenses of Conviction

1. The Defendant agrees to plead guilty to Counts One and Ten of the Superseding Indictment which charges him with conspiracy in violation of 18 U.S.C. § 371, and interstate transportation of stolen property in violation of 18 U.S.C. § 2314. The Defendant admits that the Defendant is, in fact, guilty of those offenses and will so advise the Court.

## Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the times alleged in the Superseding Indictment, in the District of Maryland:

### Conspiracy

a. That the Defendant and at least one other person entered into an unlawful agreement;

b.     That the purpose of the agreement was to execute a scheme and artifice to defraud or to obtain money by means of materially false and fraudulent pretenses, representations and promises through the use of interstate wires, and to transport, transmit and transfer securities and money in interstate commerce, knowing them to have been stolen, converted and taken by fraud, as charged in the Superseding Indictment; and

c.     That the Defendant knowingly and willfully became a member of the conspiracy.

Interstate Transportation of Stolen Property

a.     That the securities charged in the Superseding Indictment were stolen, converted, or taken by fraud;

b.     That the Defendant transported, transmitted, or transferred, or caused to be transported or transmitted the property in interstate commerce;

c.     That at the time of the transportation or transmission, the Defendant knew the property was stolen, converted, or taken by fraud; and

d.     That the value of the property was at least $5,000.

### Penalties

3.     The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|
| | | | | | |
| One | 18 U.S.C. § 371 | 5 years | 3 years | $250,000 or twice the gross amount of loss or gain caused by the offense, whichever is greater | $100 |
| Ten | 18 U.S.C. § 2314 | 10 years | 3 years | $250,000 or twice the gross amount of loss or gain caused by the offense, whichever is greater | $100 |

a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

2

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The

3

jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

4

## Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a.     The base offense level is six (62. U.S.S.G. §2B1.1(a)(1) and § 2X1.1. The offense level is increased by sixteen (16) because the loss caused by the offense was more than $1,500,000. U.S.S.G. § 2B1.1(b)(1)(I). The parties agree that the defendant's final adjusted offense level, prior to the resolution of the disputed guideline factor referenced in paragraph 7 below, and any adjustment for acceptance of responsibility, is twenty-two (22).

b.     This Office does not oppose a two (2)-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one (1)-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

c.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

## Disputed Guideline Factor

7.     The parties disagree as to whether there should be an adjustment to the guideline calculation on account of the Defendant's role in the offenses. It is the government's position that the Defendant should receive a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) on the

ground that he was an organizer or leader of criminal activity that involved five or more persons or was otherwise extensive. The Defendant is free to oppose the application of any role enhancement pursuant to U.S.S.G. § 3B1.1.

8.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.     At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute (s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute (s), to the extent that such challenges legally can be waived.

b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i.     The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

ii.     This Office reserves the right to appeal any sentence below a statutory minimum.

c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

6

Restitution

11.     The Defendant agrees to the entry of a restitution order for the full amount of the victim's loss that was reasonably foreseeable to the Defendant, which the parties stipulate is $2,478,069.16. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

Forfeiture

12.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense, which is at least $2,478,069.16.

13.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil

or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

16.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

18.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

19.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other

8

agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

       If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Kathleen O. Gavin
Assistant United States Attorney

       I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9/30/20
Date

X
Thi Van Ho

       I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

9/30/20
Date

Jack McMahon, Esquire

9

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

At all times relevant, the Defendant, Thi Van Ho ("Ho"), was a resident of Bear, Delaware.

Beginning in or before September, 2015 and continuing until in or about March, 2019, Thi Van Ho, Kevin Miller, Chonnathason Has, a/k/a Bora Has, Mean Peach and Earn Peng Chou conspired to and did engage in a scheme and artifice to defraud Company A by means of materially false and fraudulent pretenses, and to transport, transmit, and transfer in interstate commerce securities having a value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud.

Company A, which was located in Linthicum Heights, Maryland, was engaged in the business of manufacturing personal products such as hair care, hair dye, and lotions. Kevin Miller worked as the Director of Planning, Logistics and Control at Company A. In that position, Miller was responsible for the determination of timing and volume requirements for materials used in the manufacturing operation. Miller held a position of trust within the company, and thus, had the authority to approve payments of invoices submitted by vendors and service providers without obtaining a second approval from anyone else in the company. Miller would issue those approvals by initialing the invoices and submitting them to Company A's accounting department for payment.

In or before September 2015, Company A assigned Miller the task of arranging for vendors to dispose of various waste products that had been stored at the company's two warehouse locations in Maryland. Around that same time, Ho and Miller, who knew each other from past business dealings, agreed to engage in a scheme to defraud Company A by creating and using shell entities to submit false and fraudulent invoices to Company A for waste disposal and other work that was never performed by those entities.[1] Has, Peach and Chou also agreed to engage in the scheme to defraud.

The first shell entity created and used in the scheme to defraud was MPC II, LLC. On August 24, 2015, Peach signed the Articles of Incorporation to create MPC, II, LLC in the State

---

[1] It is the government's position that Ho first proposed the scheme to defraud to Miller. The defendant disputes that position.

1

of Maryland. He listed himself as the resident agent and 247 South Bridge St., Elkton, Maryland as the company's address. That address, in fact, was a mailbox located at Mail Bag Plus, Inc.

The second shell entity was Marka Warehouse System, LLC. On November 12, 2016, Chou rented Box #168 at The UPS Store #6678 in Westmont, New Jersey in the name of Marka. Two days later, on November 14, 2016, Chou signed a New Jersey Public Records Filing for New Business Entity form for Marka, listing himself as the president and sole manager of the company and the address of The UPS Store in Westmont, New Jersey as the company's business address. Chou also indicated on that form that Marka's business purpose was "provinding [sic] racks, shelves," when, in fact, Marka was a shell entity with no legitimate business activity.

The third shell entity was SMNI, LLC. On December 30, 2016, Articles of Organization for SMNI, LLC were filed in the State of Virginia. The Articles of Organization listed Peach as the resident agent as well as a member or manager of the company, and falsely stated that Peach was a Virginia resident. That same day, Peach and Has rented Box # 204 at The UPS Store #4832 in Arlington, Virginia in the name of SMNI, LLC. Peach signed the Mailbox Services Agreement and Has paid for the rental fee with his credit card.

In furtherance of the scheme, Ho and Miller agreed on the names of each of the shell entities, and the amount to charge Company A on each fraudulent invoice. Miller submitted the invoices to Company A and approved them for payment, which caused Company A to issue payments to the shell entities in the form of checks. The checks were either mailed to the particular shell entity address by Company A or hand-delivered by Miller to Ho or one of the other conspirators. Has, Peach and Chou endorsed and cashed the various Company A checks at check cashing facilities located in Philadelphia, Pennsylvania. When Peach or Chou cashed a Company A check, the proceeds were divided roughly as follows: 53% to Ho, 35% to Miller, 7% to Has, and 4% to Peach or Chou.[2] When Has cashed a check, he kept 11% of the proceeds.

After a check was negotiated by one of the conspirators, Has, and occasionally Peach, delivered the cash proceeds to Ho, minus the money that went to Chou, Peach and Has. Ho would then meet with Miller, usually at a rest stop on Interstate Highway 95 near the Delaware/Maryland border, to give Miller his 35% share of the proceeds. Ho used the remainder of the proceeds for his own personal use and benefit, including the purchase of multiple money orders to pay for household and other expenses.

Between September 9, 2015 and December 10, 2018, the conspirators created and submitted false and fraudulent MPC, II, Marka Warehouse Systems and SMNI, LLC invoices to Company A for goods and services that were never provided. Company A issued payments for those false and fraudulent invoices that totaled $2,527,234. All of the fraudulently obtained checks were issued in Maryland and cashed in Pennsylvania as follows:

_____

[2] The remaining 1% was the fee charged by the check cashing facility.

| Company | Date Paid | Check Number | Amount | Date Negotiated |
|---------|-----------|--------------|--------|-----------------|
| MPC II | 9/9/2015 | 51545 | $19,365.00 | 9/14/2015 |
| MPC II | 9/16/2015 | 51660 | $9,330.00 | 9/22/2015 |
| MPC II | 10/5/2015 | 51872 | $8,390.00 | 10/8/2015 |
| MPC II | 10/16/2015 | 52015 | $10,485.00 | 10/23/2015 |
| MPC II | 10/21/2015 | 52085 | $12,845.00 | 10/23/2015 |
| MPC II | 11/6/2015 | 52315 | $21,105.00 | 11/9/2015 |
| MPC II | 11/16/2015 | 52411 | $23,060.00 | 11/17/2015 |
| MPC II | 12/7/2015 | 52556 | $21,735.00 | 12/8/2015 |
| MPC II | 12/22/2015 | 52659 | $23,375.00 | 12/30/2015 |
| MPC II | 12/30/2015 | 52764 | $12,905.00 | 12/30/2015 |
| MPC II | 1/12/2016 | 52941 | $24,475.00 | 1/13/2016 |
| MPC II | 1/20/2016 | 53020 | $38,655.00 | 1/20/2016 |
| MPC II | 2/5/2016 | 53134 | $23,740.00 | 2/5/2016 |
| MPC II | 2/23/2016 | 53321 | $26,480.00 | 2/24/2016 |
| MPC II | 3/10/2016 | 53505 | $35,635.00 | 3/15/2016 |
| MPC II | 3/31/2016 | 53679 | $12,955.00 | 4/1/2016 |
| MPC II | 4/12/2016 | 53802 | $26,785.00 | 4/14/2016 |
| MPC II | 4/21/2016 | 53880 | $28,060.00 | 4/25/2016 |
| MPC II | 5/10/2016 | 54015 | $16,455.00 | 5/12/2016 |
| MPC II | 5/18/2016 | 54104 | $16,040.00 | 5/19/2016 |
| MPC II | 5/31/2016 | 54251 | $17,300.00 | 6/2/2016 |
| MPC II | 6/14/2016 | 54362 | $17,895.00 | 6/16/2016 |
| MPC II | 6/23/2016 | 54591 | $17,405.00 | 6/28/2016 |
| MPC II | 7/21/2016 | 54967 | $35,230.00 | 7/25/2016 |
| MPC II | 8/18/2016 | 55315 | $36,420.00 | 8/22/2016 |
| MPC II | 9/8/2016 | 55549 | $35,185.00 | 9/10/2016 |
| MPC II | 9/22/2016 | 55743 | $39,560.00 | 9/22/2016 |
| MPC II | 10/10/2016 | 55919 | $18,895.00 | 10/12/2016 |
| MPC II | 10/19/2016 | 56036 | $39,675.00 | 10/20/2016 |
| MPC II | 11/4/2016 | 56195 | $38,310.00 | 11/9/2016 |
| MPC II | 11/15/2016 | 56296 | $40,270.00 | 11/17/2016 |
| SMNI | 5/3/2017 | 57917 | $20,455.00 | 5/5/2017 |
| SMNI | 5/18/2017 | 58156 | $35,880.00 | 5/22/2017 |
| SMNI | 6/29/2017 | 58797 | $22,390.00 | 7/3/2017 |
| SMNI | 7/13/2017 | 58890 | $18,230.00 | 7/17/2017 |
| SMNI | 7/26/2017 | 59022 | $23,915.00 | 7/27/2017 |
| SMNI | 8/30/2017 | 59585 | $47,065.00 | 8/31/2017 |
| SMNI | 9/15/2017 | 59823 | $49,755.00 | 9/25/2017 |
| SMNI | 10/13/2017 | 60137 | $52,710.00 | 10/17/2017 |

3

| SMNI | 11/13/2017 | 60467 | $46,460.00 | 11/14/2017 |
|---|---|---|---|---|
| SMNI | 12/13/2017 | 60747 | $69,240.00 | 12/18/2017 |
| SMNI | 12/28/2017 | 60872 | $51,160.00 | 1/4/2018 |
| SMNI | 1/26/2018 | 61073 | $69,590.00 | 1/26/2018 |
| SMNI | 2/27/2018 | 61477 | $82,860.00 | 2/28/2018 |
| SMNI | 3/29/2018 | 61839 | $69,050.00 | 4/9/2018 |
| SMNI | 4/23/2018 | 62161 | $67,650.00 | 4/25/2018 |
| SMNI | 5/22/2018 | 62525 | $80,945.00 | 5/23/2018 |
| SMNI | 6/12/2018 | 62803 | $48,070.00 | 6/15/2018 |
| MARKA | 11/29/2016 | 56460 | $44,543.32 | 12/1/2016 |
| MARKA | 12/12/2016 | 56577 | $52,770.51 | 12/14/2016 |
| MARKA | 12/29/2016 | 56737 | $39,364.16 | 12/29/2016 |
| MARKA | 1/12/2017 | 56940 | $35,055.15 | 1/16/2017 |
| MARKA | 1/18/2017 | 56994 | $39,407.62 | 1/30/2017 |
| MARKA | 2/22/2017 | 57331 | $37,518.70 | 3/1/2017 |
| MARKA | 4/6/2017 | 57699 | $41,414.20 | 4/10/2017 |
| MARKA | 5/31/2017 | 58335 | $47,758.30 | 6/2/2017 |
| MARKA | 7/26/2017 | 59021 | $42,209.20 | 7/27/2017 |
| MARKA | 8/30/2017 | 59581 | $30,369.00 | 9/1/2017 |
| MARKA | 9/15/2017 | 59821 | $38,478.00 | 9/23/2017 |
| MARKA | 11/3/2017 | 60353 | $30,702.90 | 11/9/2017 |
| MARKA | 11/13/2017 | 60463 | $33,013.70 | 11/14/2017 |
| MARKA | 12/13/2017 | 60744 | $18,809.70 | 12/18/2017 |
| MARKA | 3/22/2018 | 61747 | $33,013.70 | 3/28/2018 |
| MARKA | 4/23/2018 | 62159 | $33,003.10 | 4/25/2018 |
| MARKA | 5/22/18 | 62523 | $30,856.60 | 5/24/2018 |
| MARKA | 7/9/2018 | 62945 | $35,621.30 | 8/9/2018 |

At all times, Thi Van Ho acted knowingly and with intent to defraud.

SO STIPULATED:

Kathleen O. Gavin
Assistant United States Attorney

Thi Van Ho
Defendant

Defense Counsel

Jack McMahon, Esquire
Counsel for Defendant

5